IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REPUBLIC FRANKLIN INSURANCE COMPANY, | No. 4:20-CV-01741 |
| Plaintiff, | (Judge Brann) |
| v. | |
| EBENSBURG INSURANCE AGENCY, KEYSTONE INSURERS GROUP, INC. and AMERICAN BUILDERS INSURANCE COMPANY, | |
| Defendants. | |

## MEMORANDUM OPINION

JUNE 2, 2021

On September 24, 2020, Plaintiff, Republic Franklin Insurance Company, ("Republic"), filed a three-count complaint against Defendants, Ebensburg Insurance Agency ("Ebensburg"), Keystone Insurers Group, Inc. ("Keystone"), and American Builders Insurance Company ("American").[1] Republic subsequently amended its complaint on November 30, 2020.[2] Republic seeks a declaration that it is not required to defend or indemnify either Ebensburg or Keystone in an action asserted against both by American.[3] Ebensburg and Keystone have now filed motions to dismiss.[4]

---

[1] Doc. 1.
[2] Doc. 12.
[3] *Id.*
[4] Doc. 16; Doc. 27.

These motions are now ripe for disposition; for the reasons that follow, Ebensburg's and Keystone's motions to dismiss are granted.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[5] and "streamlines litigation by dispensing with needless discovery and factfinding."[6] Where applicable, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[7] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[8]

Following the Roberts Court's "civil procedure revival,"[9] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[10] and *Ashcroft v. Iqbal*[11] tightened the standard that district courts must apply to 12(b)(6) motions.[12] These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[13] Accordingly, after

---

[5] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).
[6] *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).
[7] *Id.* at 326 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).
[8] *Id.* at 327.
[9] Howard M. Wasserman, The Roberts Court and the Civil Procedure Revival, 31 Rev. Litig. 313, 316, 319-20 (2012).
[10] 550 U.S. 544 (2007).
[11] 556 U.S. 662, 678 (2009).
[12] *Id.* at 670 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).
[13] *Id.* (citing *Conley*, 355 U.S. at 41).

*Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[16] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[17]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[19] Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[20]

---

[14] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[15] *Id.*
[16] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal citations omitted).
[17] *Twombly*, 550 U.S. at 556.
[18] *Iqbal*, 556 U.S. at 679.
[19] *Id.* at 678 (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).
[20] *Id.*

Nevertheless, when disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[21] The Court is not, however, required to apply this tenet to legal conclusions.[22] As a matter of procedure, the United States Court of Appeals for the Third Circuit has directed district courts evaluating motions to dismiss to proceed in three steps:

(1) The court must "tak[e] note of the elements [the] plaintiff must plead to state a claim";

(2) The court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and

(3) "When there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[23]

## II. FACTS ALLEGED IN THE AMENDED COMPLAINT

### A. The Underlying Action

On August 28, 2019, American initiated suit against Keystone and Ebensburg in connection to inaccurate information contained on a workers' compensation insurance application that was submitted to American.[24] In 2008, American entered into an agency agreement with Keystone, a partnership consisting of approximately 300 insurance agencies.[25] This agreement allowed and

---

[21] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[22] *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").
[23] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[24] Doc. 12 at ¶ 32; *id.* Ex. G at ¶¶ 9-10.
[25] *Id.* Ex. G at ¶¶ 9-10.

encouraged American to solicit, receive, and accept proposals for insurance, including workers' compensation insurance from other Keystone partner agencies.[26]

In 2015, Ebensburg, one of Keystone's partner agencies, prepared and submitted a workers' compensation insurance application to American.[27] The application was submitted on behalf of Custom Installations, a roofing company whose employees worked over 15 feet above the ground.[28] American alleges in its suit that information contained within this application was false, specifically, that relating to the height at which Custom Installations' employees worked.[29] American contends that Ebensburg negligently, recklessly, intentionally, or fraudulently submitted this information to American, which resulted in American accepting a proposal that it otherwise would not have.[30]

Prior to commencing suit against Keystone and Ebensburg, American sued Custom Installations in 2015 seeking recission of the policy it had issued on the basis of fraud.[31] American did not learn that Ebensburg had completed Custom Installations' application until November 2017, after American conducted depositions of two Ebensburg employees.[32] American subsequently initiated the

---

[26] *Id.* Ex. G at ¶ 12.
[27] *Id.* Ex. G at ¶¶ 13, 20.
[28] *Id.* Ex. G at ¶¶ 17-20.
[29] *Id.* Ex. G at ¶¶ 20, 28-29.
[30] *Id.* Ex. G.
[31] *Id.* Ex. G at ¶ 40.
[32] *Id.* Ex. G at ¶ 38.

underlying action against Keystone and Ebensburg in 2019.[33]  The complaint from the underlying action asserts four counts: (1) professional negligence; (2) negligent misrepresentation; (3) fraudulent misrepresentation; and (4) breach of contract (against Keystone only).[34]  The case is currently pending before this Court.

B.     **The Present Action**

Republic issued an insurance policy to Ebensburg effective from September 1, 2019 to September 1, 2020.[35]  The policy covers Ebensburg's liability for "any 'claim' arising out of a 'wrongful act.'"[36]  The policy explains, however, that it only applies to past "wrongful acts" where "[t]he insured had no knowledge that such 'wrongful act' was likely to give rise to a 'claim' hereunder."[37]  The policy further provides that Republic must defend claims asserting that a wrongful act was "intentional, criminal, fraudulent, dishonest, malicious, knowing or willful."[38]  But the policy precludes indemnification if the insured is ultimately found to have acted in such a manner.[39]

The policy also contains an additional-insured endorsement, effective September 1, 2018.[40]  The parties do not dispute that the endorsement applies to and covers claims against Keystone.  The endorsement provides that the coverage

---

[33]   *Id.* Ex. G.
[34]   *Id.*
[35]   *Id.* at ¶ 14.
[36]   *Id.* at ¶ 19.
[37]   *Id.* at ¶ 15.
[38]   *Id.* at ¶ 18.
[39]   *Id.*
[40]   *Id.* at ¶ 17.

definitions and exclusions governing the broader policy also apply to the endorsement.[41]  The endorsement additionally specifies that it does not cover "[a]ny 'claim' for, or arising out of a 'wrongful act' which any insured knew of before the effective date of this endorsement."[42]

Republic now seeks a declaration that it has no duty to defend or indemnify Keystone or Ebensburg in relation to the underlying suit under the two prior-notice provisions (which specify that coverage only applies to wrongful acts of which the insured had no prior knowledge) and that it has no duty to indemnify under the intentional-acts exclusion described above.  Republic's complaint consists of three counts, contending that:

- First, it is not required to defend or indemnify either Keystone or Ebensburg under the policy's prior-notice provision, which states that the policy only covers wrongful acts where "*[t]he insured had no knowledge that such 'wrongful act' was likely to give rise to a 'claim' hereunder*";

- Second, it is not required to defend or indemnify Keystone under the policy endorsement's prior-notice provision, which excludes from coverage "*[a]ny 'claim' for, or arising out of a 'wrongful act' which any insured knew of before the effective date of this endorsement*"; and

- Third, in the alternative, it is not required to indemnify either party under the policy's intentional-acts exclusion, which disclaims coverage for conduct that is "*intentional, criminal, fraudulent, dishonest, malicious, knowing or willful.*"

Republic alleges that both Keystone and Ebensburg knew that Ebensburg had committed a "wrongful act" by submitting Custom Installations' application to

---
41  *Id.*
42  *Id.*

American. Republic claims that this knowledge is evidenced by the fact that an Ebensburg employee acknowledged receiving a 2015 reservation of rights letter sent from American to Custom Installations asserting that inaccurate information had been included on Custom Installations' application.[43] Republic also maintains that the 2017 depositions support a finding that Keystone and Ebensburg knew they had committed a wrongful act.

## III. DISCUSSION

### A. The Four-Corners Rule

"It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."[44] Under this approach, the "question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."[45] This principle, known as the four-corners rule, holds that "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."[46] Pennsylvania provides for no exception to this rule.[47]

---

[43] *Id.* at ¶ 38.
[44] *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d 888, 896 (Pa. 2006).
[45] *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)).
[46] *Jerry's Sport Ctr.*, 2 A.3d at 541 (citations omitted).
[47] *Lupu*, 903 F.3d at 391 (quoting *Burchick Constr. Co., Inc. v. Harleysville Preferred Ins. Co.*, 2014 WL 10965436, at *8 (Pa. Super. 2014)); *Kiely on Behalf of Feinstein v. Phila. Contributionship Ins. Co.*, 206 A.3d 1140, 1146 (Pa. Super. 2019) ("We do not consider extrinsic evidence." (citations omitted)).

Keystone argues that the four-corners rule applies and that, for Republic to show it does not have a duty to defend, it must demonstrate that the factual allegations in the underlying complaint do not state a claim covered by the policy. Keystone posits that the two prior-notice provisions constitute exclusions, and thus that the only question before the Court is whether those exclusions apply on the face of the underlying complaint. Keystone further asserts that the four-corners rule governs whether a duty to defend has been triggered; since the Court is evaluating whether the claims against Keystone and Ebensburg give rise to a duty to defend, Keystone argues that a strict application of the rule is appropriate.

In opposition, Republic contends that the four-corners rule is inapplicable because the Court is not determining whether the claims against Ebensburg and Keystone are *covered* by the policy, but rather, whether Ebensburg and Keystone have satisfied conditions necessary to make the policy *effective*. Republic asserts that extrinsic evidence may be used to show that a policy was not in effect at the time a claim was raised. And Republic argues that it may utilize extrinsic evidence of Keystone's and Ebensburg's prior knowledge because the existence of this knowledge would render the policy ineffective (under the two prior-notice provisions).[48]

---

[48] As Republic puts it, the four-corners rule does not apply "in the face of evidence that completely defeats coverage for the underlying claim." Doc. 24 at 5.

Republic relies on *LA Weight Loss Centers, Inc. v. Lexington Insurance Co.* for this proposition.[49] There, an insurer asserted that it had no duty to defend a claim against its insured because the claim had been filed prior to the effective date of the policy.[50] The court agreed because the policy stated that coverage would only be provided for claims "first made" during the policy period, and extrinsic evidence showed that the claim was actually first made before the policy took effect.[51] In a footnote, the court explained that application of the four-corners rule was unnecessary because the parties agreed that the claims would be covered had the policy been in effect.[52]

Republic interprets *LA Weight Loss* as articulating the fundamental principle that "an insurer is absolutely entitled to examine evidence outside the four corners [of the underlying complaint] to determine if the insuring agreement is satisfied."[53] Republic thus appears to distinguish between cases addressing the scope of a policy's *coverage* and those addressing the policy's *existence*. Building on this distinction, Republic contends that the two prior-notice provisions here are, in essence, conditions which must be met for the policy to come into effect. Though it does not explicitly say so, Republic seems to suggest that these provisions create

---

[49] 2006 WL 689109 (Phila. Ct. Com. Pl. Mar. 1, 2006), *aff'd* 998 A.2d 999 (Pa. Super. 2010).
[50] *Id.* at *3-4.
[51] *Id.* at *4.
[52] *Id.* at *4 n.2 ("[A]pplication of the [four-corners rule] is unnecessary, since it is undisputed that the factual allegations of the underlying complaint fall within [the policy's] scope of coverage. Instead, the issue before the court is whether the [claim] was first made during the effective date of the [policy].").
[53] Doc. 24 at 6.

conditions precedent.[54] Republic consequently claims that Keystone's arguments are incorrect because they are based on the false premise that the prior-notice provisions are exclusions and not simply conditions to the agreement.

Republic's argument fails because the prior-notice provisions constitute exclusions and not conditions precedent.[55] In *Borough of Moosic v. Darwin National Assurance Co.*, the Third Circuit ruled that the determination of whether a policy provision is an exclusion or condition precedent is not controlled by the provision's placement.[56] The insurer there argued that a related-claims provision constituted a condition precedent because it was not located within the policy's listed exclusion (it was instead within the policy's section titled "Conditions").[57] Rejecting this assertion, the Third Circuit reasoned that a provision's *effect*, not its placement, was controlling.[58] Accordingly, *Moosic* analyzed the provision,

---

[54] "A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or contractual duty arises." *Borough of Moosic v. Darwin Nat'l Assur. Co.*, 556 Fed. Appx. 92, 97 (3d Cir. 2014) (internal quotation marks omitted) (quoting 13 Williston on Contracts § 38:7 (4th ed.)). "Condition precedents neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." *Id.* (internal quotation marks and citations omitted). By comparison, "[a]n exclusion in an insurance policy is a 'limitation of liability or carving out of certain types of loss to which the coverage or the protection of the policy does not apply.'" *Id.* (quoting 17 Williston on Contracts § 49:111 (4th ed.)).
[55] The Court declines to address the question of whether the four-corners rule applies even where an insurer argues that coverage does not exist (as opposed to that the insured is excluded from coverage).
[56] 556 Fed. Appx. at 97-98.
[57] *Id.* at 96-97.
[58] *Id.* at 97-98 ("Other courts have found that the location of a provision within an insurance policy does not determine whether it is a condition or an exclusion." (citing *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1205 (2d Cir. 1995))).

determined it had an exclusionary effect, and concluded that it was therefore an exclusion.[59]

Although *Moosic* is not binding, the Court finds its reasoning persuasive, and decides that it is appropriate to evaluate the prior-notice provisions according to what they actually do rather than by how they are labeled.[60] Applying this standard, the Court holds that the prior-notice provisions are exclusionary in effect and thus constitute exclusions. Though the provisions facially appear to define (rather than exclude) claims under the policy, they operate solely to exclude coverage. In essence, they serve to limit coverage to those claims of which an insured had prior notice.[61]

The Court also notes that the prior-notice provisions are inconsistent with the definition of a condition precedent. As *Moosic* explained, a condition precedent sets forth an "act the insured must perform" or a "certain event that must occur."[62] The *Moosic* court reasoned that the related-claims provision at issue in that case did not "fit within" the delineation of a condition precedent because it did not require an action; rather, it provided that the policy would not cover related claims raised prior to the policy's effective date. Likewise, here, the prior-notice

---

[59] *Id.* at 98.
[60] *See also Peters v. World Mut. Health & Acc. Ins. Co. of Pa.*, 213 A.2d 116, 117-18 (Pa. Super. 1965) (finding that a provision was an exclusion and not a condition precedent based on the language used despite the fact that the provision was not located within the policy's "formal [e]xceptions" clause).
[61] *Moosic*, 556 Fed. Appx. at 98 ("Because the Related Claims provision limits coverage, we find that it is an exclusion to the insurance policy." (citations omitted)).
[62] *Id.* at 97.

provisions do not require an act or event to occur.  They merely specify that past wrongful acts of which an insured has knowledge are excluded from coverage.

Because the prior-notice provisions constitute exclusions, the question before the Court now is whether Republic can show that the prior-notice or intentional-act exclusions apply on the face of the underlying complaint.  In resolving this issue, the Court will *not* consider extrinsic evidence.  The Court respectfully declines to adopt Republic's interpretation of the four-corners rule as allowing extrinsic evidence where consistent with the underlying complaint.  The Court further declines to revisit the well-reasoned and thoughtful decision set forth in *MMG Insurance Co. v. Guiro, Inc.*[63]

### B. The Prior-Notice Exclusions

The Court concludes that the prior-notice exclusions do not obviate Republic's duty to defend or indemnify Keystone or Ebensburg.  Republic argues that these exclusions apply on the face of the underlying complaint based on the following five allegations from American's complaint against Keystone and Ebensburg:

> 36. Custom Installations' Answers, provided by Ebensburg, which generally misrepresented the nature of its work and specifically misrepresented that Custom Installations did not perform roofing work or work above the defined height of 15 feet, contained essential

---

[63] 432 F. Supp. 3d 471, 475-76 (M.D. Pa. 2020) (Jones, J.) ("Both Pennsylvania courts and the Third Circuit have been abundantly clear that, under Pennsylvania law, '[w]e do not consider extrinsic evidence' when determining whether 'a claim against an insured is potentially covered' for purposes of determining whether an insurer has a duty to defend." (alterations in original) (citations omitted)).

> facts that formed the inducement for American to issue the Policy to Custom Installations.
>
> 38. American did not learn that Ebensburg completed the Application, Questionnaire, and Risk Questionnaire for Custom Installations until the November 7, 2017 depositions of Ebensburg employees Karen Ligda and Kurtis Deyulis.
>
> 39. On July 20, 2015, American issued Custom Installations a workers' compensation policy . . . (the "Policy"). American issued the Policy in reliance on the accuracy of the information contained in the Application, the Questionnaire, and the Risk Questionnaire that Custom Installations does not engage in the roofing business and its workers do not work more than 15 feet above ground.
>
> 40. Because of the above-described misrepresentations of material fact, American has sued Custom Installations in this Court, Civil Action No. 3:15-cv-00295 for recission of the workers' compensation policy and for fraud (the "Custom Installations Lawsuit"). In the Custom Installations Lawsuit, Custom Installation admitted that its application to American contains false information.
>
> 47. Keystone breached its contractual and professional duties to American when Ebensburg, its partner agency, submitted materially false information in its proposal for the issuance of a workers' compensation policy to Custom Installations.

As an initial matter, the Court must determine the appropriate standard governing the exclusions' applicability. In *Selko v. Home Insurance Co.*, the Third Circuit offered an extended discussion of what an insurer must demonstrate to establish that a prior-notice exclusion applies under a professional-negligence policy.[64] The prior-notice provision at issue there extended coverage to past claims only where the insured "had no basis to believe that [he] had breached a professional duty."[65]

---

[64] 139 F.3d 146, 150-52 (3d Cir. 1998).
[65] *Id.* at 150.

Emphasizing the phrase "no basis to believe," *Selko* ruled that the policy called for a two-step analysis. First, the insurer needed to show "that the insured knew of certain facts."[66] "Second, in order to determine whether the knowledge actually possessed by the insured was sufficient to create a 'basis to believe,' it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty."[67] The first step requires subjective knowledge, while the second looks to an objective reasonable-professional standard.

The parties dispute whether the *Selko* standard applies. Republic contends that the standard governs the policy's prior-notice exclusion because the provision refers to wrongful acts that an insured knew "would likely give rise to a claim."[68] Republic also maintains that the standard applies to the policy endorsement's prior-notice exclusion because *Selko* set forth the general standard under which prior-notice exclusions should be analyzed. Keystone contends that both exclusions require subjective knowledge of the alleged wrongful act.

The Court finds first that the *Selko* standard applies to the policy's prior-notice exclusion. Though the exclusion does not use the term "basis to believe," its language necessarily implicates both a subjective component (regarding the insured's "knowledge" of a wrongful act) and an objective component (regarding

---

[66] *Id.* at 152.
[67] *Id.*
[68] Doc. 12 at ¶ 15.

whether the insured should have known that the wrongful act "would likely give rise to a claim"). Consequently, application of the *Selko* standard is warranted under this exclusion.

In contrast, the Court determines that the policy endorsement's prior-notice exclusion is governed by a purely subjective standard. The policy endorsement disclaims coverage for "[a]ny 'claim' for, or arising out of, a 'wrongful act' which any insured *knew of* before the effective date of this endorsement."[69] Given that this exclusion does not include any language referencing a reasonable-person standard (i.e., "basis to believe," "would likely give rise to"), use of an objective standard would be inapposite.

Despite the different standards governing each exclusion, the Court concludes that both are inapplicable for the same reason: the underlying complaint does not allege facts showing that either Keystone or Ebensburg possessed subjective knowledge that they had committed a wrongful act. The allegations Republic cites plead only that Ebensburg completed Custom Installations' insurance application and that the application contained incorrect information. Importantly, the complaint does not allege that Ebensburg supplied the information, falsified it, or even knew that it was incorrect. The complaint also does not allege any facts establishing that Keystone was aware that the application had been submitted with false information. As a result, the Court cannot hold that

---

[69] *Id.* at ¶ 17 (emphasis added).

these exclusions apply on the face of the underlying complaint. Republic's claims regarding its duty to defend are therefore dismissed.

### C. Duty to Indemnify and the Intentional-Conduct Exclusion

The Court further declines to reach the question of Republic's duty to indemnify under the policy as Republic's claims on this issue are unripe. "The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."[70] "Ripeness is a question of timing and 'its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"[71]

In general, an insurer's claims regarding its duty to indemnify are "not ripe for adjudication until the insured is in fact held liable in the underlying suit."[72] Because "[a]ctual indemnification depends upon the existence or nonexistence of facts not yet established" prior to adjudication, "a decision on [an insurer's] obligation to indemnify" is often inappropriate.[73] Accordingly, Republic's claims

---

[70] *Am. States Ins. Co. v. Component Tech., Inc.*, 420 F. Supp. 2d 373, 374 (M.D. Pa. 2005) (internal quotation marks omitted) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)).
[71] *Id.* (quoting *Taylor v. Upper Darby*, 983 F.2d 1285, 1290 (3d Cir. 1993)).
[72] *Metropolitan Property & Cas. Ins. Co. v. Spayd*, 2017 WL 3141170, at *2 (E.D. Pa. July 24, 2017) (citations omitted).
[73] *C. H. Heist Caribe Corp. v. Am. Home Assur. Co.*, 640 F.2d 479, 483 (3d Cir. 1981); *Heffernan & Co. v. Hartford Ins. Co. of Am.*, 614 A.2d 295, 298 (Pa. Super. 1992) (holding that an entry of summary judgment on the scope of an insurer's duty of indemnification was inappropriate prior to an entry of judgment in the underlying action).

regarding its duty of indemnification are dismissed without prejudice as unripe until further factual development has occurred.[74]

## IV. CONCLUSION

Ebensburg's and Keystone's motion to dismiss pursuant to Rule 12(b)(6) is granted. Leave to amend Republic's claims regarding its duty to defend is denied. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[75] "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[76] Although the federal rules articulate a "liberal pleading philosophy," a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.[77]

Amendment in this case on the question of Republic's duty to defend would be futile because the question of whether any of the three policy exclusions apply is contingent upon a limited set of facts contained within the four corners of the underlying complaint. Because these facts cannot be supplemented, and because they have been duly analyzed by this Court, any amendment would be futile. Accordingly, Republic's claims regarding its duty to defend are dismissed with

---

[74] *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) (noting that the proper disposition in these circumstances is to dismiss without prejudice); *Spayd*, 2017 WL 3141170, at *2 (same).
[75] *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir. 1993).
[76] *Burlington*, 114 F.3d at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 Moore's Federal Practice, supra § 15.15[3], at 15-47, 48 (3d ed. 2000).
[77] *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

prejudice and leave to amend is denied. Since Republic's claims regarding its duty to indemnify are unripe, they are dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge